FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

01 FEB 14  AM 10: 32

U.S. DISTRICT COURT
N.D. OF ALABAMA

CASSANDRA YELLING,

    Plaintiff,

vs.

CASE NO. CV-00-J-067-S

TENET HEALTH SYSTEM, INC., and
BROOKWOOD HEALTH SERVICES, INC.,

    Defendants.



ENTERED

FEB 1 4 2001

## MEMORANDUM OPINION

    Currently pending before the court is the defendants' motion for summary judgment (doc. 33), evidence in support of said motion (doc. 34) and a memorandum of law. The plaintiff submitted a brief in opposition thereto and filed evidence in support of her opposition (doc. 49) to which the defendant has submitted a reply.

    Plaintiff commenced this action by filing a complaint alleging the defendant discriminated against her on the basis of her race (black) in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, ("Title VII"). Upon consideration of the pleadings, memoranda of the parties and evidentiary submissions received, the court concludes that the motion for summary judgment is due to be granted as no genuine issues of material fact remain and the defendant is entitled to judgment in its favor as a matter of law.

59

**FACTUAL BACKGROUND**

The plaintiff began working for defendant through ETCOR temporary services on September 15, 1998. Complaint at ¶ 3, plaintiff depo. at 127. Plaintiff claimed she was constructively discharged by defendant on March 23, 1999.[1] Complaint at ¶ 3 and Count II. The plaintiff alleges she suffered due to a racially hostile environment. Complaint at Count I.

Plaintiff alleges that Pat Johnson, the lead collector for defendant's collection department, created a hostile environment by regularly using racial slurs to refer to black employees. Plaintiff's brief at 1; plaintiff depo. at 161. Plaintiff admits she learned of these slurs through other employees in the office reporting them to her. Plaintiff's brief at 1-2. The plaintiff also relies on information concerning Johnson's comments after the date she left her employment. *Id.* at 2. The plaintiff worked as a patient account specialist. Plaintiff depo. at 157-158. Carolyn Grant, a black woman, was the lead person, under Karl Urban. *Id.* at 158-160. This was separate from the collections department. *Id.* at 162. Plaintiff did not report to Johnson and was not assigned work by nor was her work reviewed by Johnson. *Id.* at 162-163, 166. Plaintiff was never reprimanded or disciplined by Johnson. *Id.* at 163.

The plaintiff was given a warning by ETCOR on or about March 4, 1999. Plaintiff depo. at 168. The warning was reviewed with the plaintiff on March 8, 1999, at which time she was told she had to notify ETCOR when she would be absent from work with defendant. *Id.* at 170.  This warning resulted from the defendant complaining to ETCOR that the plaintiff missed too much time from work. *Id.* at 172, 173. The plaintiff was informed that

---

[1] The plaintiff has abandoned this claim. Plaintiff's brief in response at 4.

she was expected to work an eight hour day. *Id.* at 176. Three days later, the plaintiff resigned, effective March 22, 1999. *Id.* at 179. She testified that her understanding was that she needed to be there every day, eight hours a day. *Id.* at 213. She stated at deposition she could not do this. *Id.* at 214.

The plaintiff stated in her deposition she felt that her supervisor, Urban, called ETCOR about the plaintiff's excessive absences in retaliation for her telling him the Friday before that racial slurs were being made. *Id.* at 186-187, 191. The plaintiff alleges that she made this comment to him at the same time she asked to be off during the following week. *Id.* at 188, 190. Plaintiff called Urban at his office that Sunday and left him a message that she would need an additional day off. *Id.* at 192-193. The plaintiff agrees this additional day off was not approved by Urban. *Id.* at 201. The plaintiff alleges she was told by ETCOR that Urban wanted to terminate her assignment, although she admits it was not terminated by him at any time before she resigned. *Id.* at 203-204, 209, 212. The plaintiff states upon her return to work she asked Urban if he tried to terminate her assignment, to which he replied "no." *Id.* at 206.

When asked why she believed she was being set up to be terminated, the plaintiff replied "I mentioned that and I knew probably later on before that time that I was probably going to have to be off again. She said that she would work with me, but I didn't believe neither one of them." Plaintiff depo. at 212-213. The plaintiff then states that she thought she was going to be terminated because she had called in before and Urban had not said anything about it. *Id.* at 215-216. The plaintiff alleges her hostile environment claim is based on one piece of a comment she heard, the comments by her co-workers, and that Urban would stare at her to intimidate her and Pat Johnson would stare at her. *Id.* at 294.

3

This staring was hostile, but possibly not related to race. *Id.* at 298, 299. She also alleges another incident involving hot dogs when Johnson did not allow two employees to eat the hot dogs with everyone else. *Id.* at 296. Plaintiff heard this from Mullins. Plaintiff depo. at 305; Mullins depo. at 61-62.

The plaintiff also alleges she heard a racial slur on one occasion in which Nancy Mullins, a co-employee, was called into Johnson's office. The plaintiff, walking past Johnson's office, heard the words "damn nigger." Plaintiff depo. at 221. She was later told by Mullins this comment referred to plaintiff. *Id.* at 221-222, Mullins depo. at 38. The plaintiff stated in her deposition this was the only comment she heard with her own ears. Plaintiff depo. at 222, 235. She also never observed Johnson do anything which reflected racial bigotry. *Id.* at 235. However, she added, that after Urban asked the plaintiff if she could work on a Saturday and the plaintiff responded that he would have to keep her kids, Urban stated that she would not want him to do that as he would hang them from the highest tree in his yard. *Id.* at 223-224. The plaintiff stated this comment made her think of lynching, but also admitted she did not think of this as a racial comment at the time. *Id.* at 225-226.

The plaintiff further alleges that she was told by white employees that Johnson told them not to associate with black employees and not to eat lunch together. Plaintiff depo. at 236. Tina Farmer, Vickie Kemp and Nancy Mullins each told plaintiff this.[2] *Id.* However, the plaintiff never saw Tina Farmer stay away from the black employees, as she mostly

---

[2]Although this person is referred to in the deposition transcript as Vickie "Kipp," the plaintiff corrects counsel and states that her name is "Vickie Kemp." See plaintiff depo. at 314. This is apparently the same person as Vickie Moore.

"hung out with Latrice" who is black. *Id.* at 237. Plaintiff states she was told by Tina Farmer that Johnson had told her "not to associate with the black girls" and "that after I had left Tina told me that Pat had been using racial slurs and had called us 'niggers.'" Plaintiff's depo. at 237-239. Farmer apparently told Wesley this too. Wesley depo. at 39. Plaintiff admits all of these allegations from Tina Farmer came to plaintiff's knowledge after she left her employment with defendant. Plaintiff depo. at 240. Farmer, Kemp, Mullins and Latrice Wesley are the employees with whom the plaintiff had conversations in which racial comments were reported to her.[3] *Id.* at 253-254.

The plaintiff alleges Nancy Mullins told her, after she turned her resignation in, that Johnson said "one down and six more to go – six more niggers to go." Plaintiff's depo. at 241; Mullins depo. at 64, 65.[4] This comment was overheard by Dorothy Kanant according what Mullins told the plaintiff. Plaintiff depo. at 249. Mullins also told plaintiff that Johnson said not to go to lunch with "those 'pack of niggers.'" Plaintiff depo. at 265-266. After the plaintiff left her employment, Mullins on two occasions told her other things Johnson allegedly said. *Id.* at 245, 247. These were the only comments she heard from Mullins. *Id.* at 251.

The plaintiff alleges on March 19, after she had turned in her resignation, Kemp told her that Johnson had called plaintiff a "nigger." *Id.* at 254. Kemp (Kipp) also told Wesley

---

[3]Ms. Wesley resigned her employment with defendant in April, 1999, and filed suit, also claiming a hostile environment. Wesley depo. at 63-64. Nancy Mullins has similarly filed suit against defendant. Mullins depo. at 6. She quit working for defendant in March, 1999. Mullins depo. at 52.

[4]Mullins testified that they assumed Johnson was referring to race by this comment because six black women worked in the office at that time. Mullins depo. at 69.

that Johnson was a racist during a conversation with her and Mullins. Wesley depo. at 41-42. Mullins testified that Kipp told Wesley that Johnson had used a derogatory term and Wesley told Farmer, at which point Mullins and Kipp confronted Johnson, who said Kipp was a liar. Mullins depo. at 32. Kipp (Moore) denies making such statements. Kipp/Moore depo. at 14.

As to Wesley, the plaintiff alleges that "Latrice would tell me what Tina had told her and what Vickie and Nancy had told her." Plaintiff depo. at 256. She reported "I heard that Pat told the white girls not to associate with us and that we're being called niggers." *Id.* Wesley did not actually hear Johnson make these comments. Plaintiff depo. at 351; Wesley depo. at 60-61. Plaintiff alleges she heard the same thing from Carolyn Grant.[5] Plaintiff depo. at 256. Wesley also related an incident to her in which Johnson used a racial slur which Wesley said Vickie Moore and Nancy Mullins reported to personnel and were told there was nothing that could be done. *Id.* at 257-258, 263-264, Wesley depo. at 43-44. This complaint was made before the plaintiff began working for defendant, but reported to her sometime in March, 1999.[6] Plaintiff depo. at 259, 261. The plaintiff herself never reported Johnson to the personnel office. *Id.* at 358-359.

Plaintiff never heard Johnson instruct white employees not to associate with black employees. Plaintiff depo. at 264, 266. However, plaintiff does state that her lawsuit is

---

[5]In her deposition, Wesley alleges Carolyn Grant, who is black, would try to get people fired, including Cassandra Yelling. Wesley depo. at 83.

[6]Interestingly, in her own deposition, Wesley states she, herself, went to the personnel office to complain about Johnson. Wesley depo. at 36-37. Wesley relates she heard about racial slurs from Farmer, Kipp [Kemp] and Mullins. Wesley depo. at 39, 61.

6

based upon Pat Johnson's alleged comments and behavior.[7] *Id.* at 267. Plaintiff recalls that she was told seven days before her last day of employment to remove her belongings from her desk so that her replacement, a white individual, could have her desk. *Id.* at 317. She alleges this contributed to the hostile environment. *Id.*

The court notes, in the light most favorable to the plaintiff, a supervisor who was not plaintiff's supervisor may have made comments derogatory to the black employees, only one of which the plaintiff heard in her six or seven months of employment. In addition, rumors and hearsay statements were plentiful regarding co-workers allegations of what that supervisor may have said to other people who then told the plaintiff. On this set of facts, the plaintiff asserts as hostile environment claim.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

---

[7] In her deposition, the plaintiff states a claim for pay disparity as well. As plaintiff never made this allegation in a pleading and never addressed such an allegation to the EEOC for investigation, this court does not address such a claim. See plaintiff's depo. at 271-272.

7

*Celotex Corp.* 477 U.S. at 322-23. The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed. R. Civ. Pro 56(e). In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita*, 475 U.S. at 587, *see also Anderson*, 477 U.S. at 249. The non-movant must "demonstrate that there is indeed a material issue of fact precluding summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

On motions for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *See Adickes v. SH. Kress & Co.*, 398 U.S. 144, 157 (1970). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249. The basic issue before the court on a motion for summary judgment is "whether the evidence presents a

sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-252.

## LEGAL ANALYSIS

Plaintiff asserts solely that the above facts constitute a hostile environment. To establish a prima facie hostile environment claim, the plaintiff must show that the actions of the defendant altered the condition of the workplace, creating an objectively abusive and hostile atmosphere. *Edwards v. Wallace Community College*, 49 F.3d 1517, 1521 (11th Cir.1995). If the workplace is permeated with "discriminatory intimidation, ridicule, and insult," that is sufficiently severe to "alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 370 126 L.Ed.2d 295 (1995). In *Edwards,* the court noted that for racial slurs of co-workers to create an "atmosphere charged with racial hostility" the comments must be "commonplace, overt and denigrating." *Edwards*, 49 F.3d at 1521.

This court is aware that a plaintiff may have a viable hostile environment claim even when the racial remarks were not directed at her. *Busby v. City of Orlando*, 931 F.2d 764, 785 (11th Cir.1991). However, unlike that case, here the plaintiff cannot substantiate without resorting to double and triple heresay that such statements were ever made. As the Eleventh Circuit has observed, Title VII was not meant to be a federal "civility code." *Mendoza v. Borden Inc.,* 195 F.3d 1238, 1245 (11th Cir.1999). Rather, establishing that harassing conduct was sufficiently severe or pervasive to create a sufficiently hostile environment so as to alter terms or conditions of employment includes a subjective and an objective component. *Mendoza,* 195 F.3d at 1246, citing *Harris,* 510 U.S. at 21-22, 114 S.Ct. S.Ct. 367.

In addition to the employee perceiving the harassment as sufficiently severe and pervasive to alter the terms or conditions of her employment, her subjective perception must be objectively reasonable. The environment must be one that "a reasonable person would find hostile or abusive" and that "the victim ... subjectively perceive[s] ... to be abusive." *Mendoza*, 195 F.3d at 1246. As to the objective reasonableness of the plaintiff's perception, the court must consider the frequency of the discriminatory conduct, the severity of the discriminating conduct, whether the conduct is threatening or humiliating, and whether the conduct unreasonably interferes with the plaintiff's performance at work. *Edwards*, 49 F.3d at 1521-1522. Here, the plaintiff's co-workers were kept busy reporting to the plaintiff rumors of what other co-workers told them that Pat Johnson had said. The plaintiff only heard one portion of one remark from Johnson, who was not her supervisor, and one vague, ambiguous remark about children in trees from Urban, who was her supervisor. This court notes every other allegation of a discriminatory remark made by plaintiff would be inadmissible at trial as the plaintiff heard what Pat Johnson allegedly said second, third and fourth hand. At least one of the comment making employees denies any such comments, thus, the plaintiff's statements of what Moore/Kipp told her are not admissible. *See Damon v. Fleming Supermarkets*, 196 F.3d 1354, 1359, n.1 (11th Cir. 1999).

Additionally, the variety of comments reported to plaintiff after she voluntarily resigned her position could in no way contribute to her allegations of a racially hostile environment. *See Edwards*, 49 F.3d at 1522. Given the facts of this case, the evidence submitted and the allegations of the plaintiff, this court finds that the statements about which plaintiff complains simply do not rise to the level needed to create a genuine issue of material fact for trial.

## **CONCLUSION**

The court having considered the foregoing, and finding that the plaintiff has failed to establish any genuine issue of material fact sufficient to allow this case to proceed to trial, the court **ORDERS** that the defendant's motion for summary judgment is hereby **GRANTED**. The plaintiff's claims are **DISMISSED WITH PREJUDICE**. Each party is to bear its own costs.

**DONE** and **ORDERED** this the _13_ day of February, 2001.

INGE P. JOHNSON
UNITED STATES DISTRICT JUDGE